## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**KAYLA WALLACE**                                           **PLAINTIFF**

**V.**                                 **CAUSE NO.**   3:20-CV-144-NBB-JMV

**CURAE HEALTH, INC., A TENNESSEE
CORPORATION**

                                              **DEFENDANT**

                                       **JURY TRIAL REQUESTED**

---

## COMPLAINT

---

      **COMES NOW** the Plaintiff herein, **KAYLA WALLACE**, by and through counsel, and files this her "*Complaint*" against Defendant, **CURAE HEALTH, INC., A TENNESSEE CORPORATION**, and would show unto the Court the following, to-wit:

      1.     Plaintiff, **KAYLA WALLACE**, (hereinafter sometimes "*Plaintiff Wallace*" or "*Wallace*") charges that this is an action for injunctive and declaratory relief and damages to redress unlawful racial discrimination, retaliation, and deprivation of employment benefits as a result of Defendant's violation of *Title VII of the Civil Rights Act of 1964, as amended*; and *42 U.S.C. § 1981, being the Civil Rights Act of 1991, as amended.*

      2.     Plaintiff Wallace is bringing claims for actual, compensatory and punitive damages; and for any and all relief she is entitled to receive from this Court as a result of her being subjected to discrimination on account of her race (African America) that resulted in her

unlawful suspension, demotion, hostile work environment, and retaliation that occurred as a result of the acts and conduct of Defendant, **CURAE HEALTH, INC. A TENNESSEE CORPORATION** (hereinafter sometimes referred to as "***Defendant Curae Health***" or "***Curae Health***").

3.    Plaintiff Wallace would show that at all material times referred to herein, and that during the acts alleged herein, Defendant Curae Health acted by and through its designees and agents, and members of management, Cindy Tritt and Alecia Benson, both Caucasian, Defendant's HR Directors, Bridgett Cosby and David Lopater, each who were acting within the purpose and scope of his or her agency or employment, and their acts and conduct, as alleged herein, were known to, authorized and ratified by the Defendant Curae Health and their actions, as alleged herein, are imputed to the Defendant Curae Health.

## JURISDICTION

4.    That jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2201; 29 U.S.C. § 641 et seq.; and, 42 U.S.C. § 1981 *et seq*.; and 29 U.S.C. § 2601 *et seq*. Jurisdiction over any state law claims of Plaintiff Sparks is by way of supplemental jurisdiction, 28 U.S.C. § 1367.

## PARTIES

5.    Plaintiff, **KAYLA WALLACE**, is an adult, resident citizen of Lee County, Mississippi, residing at 1909 Pheasant Run, Tupelo, Mississippi 38801.  Plaintiff Wallace was an ER Nurse at Defendant's facility from 2014 until her transfer in October 2018 to the Panola Medical Center West or "APS West Campus" by Defendant Curae Health and her unlawful discharge on November 5, 2018.

2

6.      Defendant, **CURAE HEALTH, INC.,** is a Tennessee corporation, with its principal executive offices and place of business being located in Knoxville, Tennessee. Plaintiff Wallace was employed a Defendant's Panola Medical Center, Batesville, Mississippi. Plaintiff Wallace was working at Defendant's hospital at all material times as alleged in the Complaint.

7.      Defendant, Curae Health, Inc., at all material times was and is doing business in the State of Mississippi, and may be served with process of this Court as provided by law to receive service of process by serving the designated agent for service of process as follows: *Steven D. Sass, 1721 Midpark Road, Suite B200, Knoxville, Tennessee 37921-5977*, and pursuant to *Rule 4 of the Federal Rules of Civil Procedure*.

## INTRODUCTION

8.      Plaintiff Wallace, an African American female, was employed at Defendant Curae Health's Panola Medical Center in Batesville, Mississippi.  Plaintiff Wallace had been employed as an Emergency Room ("ER") Nurse at Defendant's Panola Medical Center ("PMC") since 2014.  Wallace had been an ER Nurse for most of her nursing career.

9.      Plaintiff Wallace has nursing certifications in Advanced Cardiac Life Support, Pediatric Advanced Life Support, Basic Life Support, Basic Life Support Instructor, and a Certification in Trauma Nursing (TNCC). Trauma nurses work in areas of Emergency rooms and critical care units. As an ER Nurse Wallace took care of patients suffering from serious and life-threatening injuries and illness.

10.     Plaintiff Wallace, at all material times alleged herein, was the ***only*** African American ER Nurse at PMC.  Wallace was a "critical care" trauma nurse. Plaintiff Wallace's supervisor and the "ER Director" at Panola Medical Center was **Cindy Tritt** ("Tritt"), a

3

Caucasian female. The Director of Nursing ("DON") at Defendant's facility was **Alecia Bensen** ("Bensen") a Caucasian female.

11.     Plaintiff Wallace would show that Tritt replaced Dana Hall ("Hall") as Wallace's supervisor after Hall left the employment of Panola Medical Center on or about July 21, 2018. Tritt was hired by Defendant Curae Health on or about July 9, 2018. Tritt was a new-hire at the Panola Medical Center and she reported to the DON Bensen.

12.     Plaintiff Wallace would show that Tritt became her supervisor on or about August 1, 2018. Dana Hall trained Tritt during the last two (2) weeks of her employment at Panola Medical Center. Neither Tritt nor Bensen had addressed Wallace's behavior at work or that any nurses had complained about working with Wallace.

13.     Wallace had never been disciplined by Hall at any time during her employment at PMC and prior to September 26, 2018, Wallace had not been disciplined by Tritt. Hall worked with Wallace in her management role for several years in the ER Department at PMC. Hall was a "House Supervisor" of PMC and later became the ER Director at PMC. Hall served as Wallace's supervisor in the ER and according to Hall, Wallace was a "model employee' at Panola during Hall's employment at Defendant's facility.

14.     On or about September 18, 2018, Plaintiff Wallace was falsely accused by DON Bensen of making incorrect triage sheets for patients regarding a serious bus accident that took place on September 17, 2018. Wallace was the only African American nurse on staff the day of the bus accident. Wallace did not work on any trauma patients, or prepare any paperwork, from the bus accident that day. A Caucasian employee, Michelle Aldison, made the error that day that was blamed on Wallace.

15.     On September 26, 2018, Wallace was accused by Tritt of disorderly conduct in the workplace, unprofessional conduct, attitude misbehavior, and bullying. Tritt suspended Wallace for one (1) day.  Specifically, Tritt told Wallace that she disrespectful, upsetting staff, engaging in hostile and bullying conduct as viewed by others; and that she had a "problem" with her fellow nurses as they did not want to work with Wallace.  Wallace was distraught by these vicious allegations of Tritt and she cried during the meeting.

16.     Plaintiff Wallace would show that the "work related issues" addressed that day by Tritt dated back to **August 4, 2018**, when Tritt became Wallace's supervisor in the ER at PMC. The August 4, 2018 matter related to Wallace's handling of a patient present in labor with no OB-GYN doctor in the hospital. Out of concern for the health of the patient, Wallace contacted a doctor for instructions on the handling of emergency situation and providing proper care for patient and baby.  No one ever discussed Wallace's handling of the emergency situation until September 26, 2018.

17.     On September 29, 2018, at 6:42 p.m. Tritt sent Wallace a text message informing Wallace that she had "spoken to HR" and that effective Monday she had been placed on administrative leave; and that Wallace was not to report to work at the ER at PMC.  Wallace would never return to job in the ER at PMC.  Wallace was replaced by a Caucasian ER Nurse that Tritt moved from night shift after Wallace was placed on administrative leave by Defendant Curae Health.

18.     On or about October 4, 2018, Wallace file an internal complaint/grievance regarding her disparate treatment in the workplace that occurred on September 26, 2018 and Wallace's being placed on administrative leave by PMC on September 29, 2018.  Wallace was still upset at the allegations made by Tritt and her treatment in the workplace. The internal

complaint/grievance addressed in ***specific detail*** the allegations made by Tritt and the discipline imposed on her by Tritt.

19.    In the event Wallace had engaged in such conduct as claimed by Tritt.  Defendant Curae Health had policies in place for an investigation; and for review by management as to such improper conduct or bullying.  However, there was no mention made by Triit that Wallace had engaged in such perceived bullying prior to September 26, 2018; and Wallace never participated in any investigation of the matter by management of Defendant Curae Health.

20.    On or about October 8, 2018, and after the filing of the internal grievance, Wallace was demoted and "***transferred***" to the APS West Campus, a 57-bed acute, inpatient psychiatric facility that specializes in the stabilization of psychiatric emergencies for adults as well as chemical detoxification unit. HR Director, Bridgett Cosby, told Wallace of this "transfer" with no explanation as to the reason for her being assigned to the APS West Campus to treat psychiatric patients.

21.    On or about October 15, 2018, Wallace began working at the psychiatric hospital without having any experience or training in caring for the category of patients housed at the APS West Campus. Wallace's transfer resulted in a demotion in duties and responsibilities of Wallace, a seasoned ER Nurse at PMC.

22.    Defendant Curae Health did not have a policy or practice to transfer nurses from the ER to the psychiatric ward – Behavioral Health Department.  No one discussed the transfer with Wallace and this was a forced "adverse" reassignment on the part of Defendant Curae Health.  Wallace was never told of the reason for the forced reassignment.

23.    On or about October 17, 2018, Wallace filed her second complaint/grievance after the transfer to APS West Campus and her demotion in duties. Wallace requested that upper

6

management of Curae Health address the disparate treatment and retaliation that resulted in her transfer to the psychiatric hospital at APS West Campus; and reduction of her job duties as a result of the transfer.

24.     Plaintiff Wallace would show that no one in management of Defendant Curae Health responded to Wallace's first complaint/grievance; and she continued to work at APS West Campus.  Defendant Curae Health did not conduct any investigation and provided no information to Wallace surrounding the actions of disparate treatment by Tritt and Bensen or Wallace's complaints.  Wallace knew under Defendant's policy that complaints like hers should be timely investigated by management.

25.     On or about November 5, 2018, Wallace had no alternative but to resign her employment.  Wallace had suffered a reduction in job responsibilities, reassigned to menial and degrading work, and was humiliated Defendant's actions that were calculated to encourage Wallace to resign her employment.  Wallace's resignation letter is attached and marked **Exhibit A** and incorporated herein by reference.

26.     On or about January 14, 2019, Plaintiff Wallace filed her Charge of Discrimination and Retaliation, and hostile work environment ("HWE") claim against Curae Health, Inc. d/b/a Panola Medical Center with the U.S. Equal Employment Opportunity Commission ("EEOC").   Wallace's Charge filed with the EEOC is attached hereto marked **Exhibit "B"** and incorporated herein by reference.

27.     From January 14, 2019 to February 24, 2020, the Charge of Plaintiff Wallace was under investigation by the EEOC; and a "Right to Sue" was issued after the conclusion of the investigation. Wallace's "Right to Sue" issued by the EEOC is attached hereto marked **Exhibit "C"** and incorporated herein by reference.

28. Plaintiff Wallace is bringing this action in timely manner and as provided by applicable law; seeking any and all relief afforded to her as a result for the acts and conduct of Defendant Curae Health that caused her to suffer injury, damage loss and that were in violations, *inter alia*, of *Title VII of the Civil Rights Act of 1964, as amended.*

## STATEMENT OF THE FACTS

29. On or about September 18, 2018, Ms. Wallace was falsely accused by Bensen of making incorrect triage sheets of patients regarding a serious bus accident that took place September 17, 2018. Bensen reported to staff in the ER that Wallace had made the wrong entries causing PMC not to receive proper payment for services rendered to the bus victims. A Caucasian employee actually made the error. Wallace was working in the ER, but not treating any bus accident patients and not involved in any bus accident paperwork.

30. On September 18, 2018, Plaintiff Wallace called Bensen, the DON, and told her that she did not make the copies. Bensen told Wallace that a co-worker, Whitney Gleaton, reported that Wallace made the wrong copies and wrong entries of the bus accident paperwork. Wallace was very distraught by this false allegation.

31. Plaintiff Wallace would show that Gleaton called Tritt and told her that she never told Bensen that Wallace made any such error or that Wallace was involved with ***any*** of the victims of the bus accident of September 17, 2018. The ER Nurse, a Caucasian female, admitted to Tritt that she had made the error. However, the ER Nurse was not disciplined, suspended, placed on administrative leave, or transferred for this "claimed" costly mistake.

32. Prior to the date of the bus accident, no one in management had complained that Wallace that she was not performing up to the expectations of management at Curae Health or PMC. Wallace was an experienced trauma nurse at PMC and her responsibilities included the

triage of sick and injured patients, treating stroke patients and preparing them for emergency procedures or emergency operations.

33.     At PMC as an ER Nurse, Wallace used her advanced nursing skills such as starting iv's, and drawing of blood; and she assisted physicians with many emergency procedures including patient intubation, cardiac resuscitation, chest tube insertions, central line placement and lumbar punctures on adults and pediatric patients.

34.     On or about September 25, 2018, Wallace returned to work following her "days off" from the ER. Neither Bensen nor Tritt said anything to Wallace regarding the bus accident of September 17, 2018 or the treatment of any of the bus accident victims that needed medical treatment at PMC.

35.     On September 26, 2018, Plaintiff Wallace was called into a meeting at PMC with Cindy Tritt and Chris Ware. Wallace was not told the purpose of the meeting. During the meeting, Wallace received a <u>written disciplinary action</u> and <u>written warning</u> citing disorderly conduct, unprofessional conduct, bullying, and attitude issues.

36.     During the meeting of September 26, 2018, Wallace was told that the discipline was for her claimed acts and conduct from August 4, 2018 to September 19, 2018. This was the first and only disciplinary write up received by Wallace from either Bensen or Tritt. Wallace was unaware of any violations on her part the merited discipline. Bensen and Tritt had said nothing to Wallace ***<u>before</u>*** the discipline of September 26, 2018.

37.     During the September 26, 2018, meeting Tritt told Wallace that ***<u>that there were 2 nurse complaints about her and that did not want to work with her.</u>*** Tritt provided no information as to the complaints or when the complaints against her were made by any nurses in

ER.   Wallace was distraught by the allegations made against her, began crying and requested a break.  After the meeting, Wallace completed her work that day.

38.    Plaintiff Wallace would show that the meeting of September 26, 2018, began a sequence of events that consisted of false claims, harassment and a hostile work environment for Plaintiff Wallace dating back to the bus accident of September 17, 2018.  The accusations made by Triutt were false, upsetting, and intentionally cruel.  Wallace was obviously hurt by the false allegations made about her and her working with ER Nurses at the hospital.

39.    Tritt had no prior conversations with Wallace about any of these discipline issues and Wallace had not been disciplined prior to September 26, 2018, by Bensen or Tritt.  Wallace, the only African American ER Nurse at PMC, was singled out and subjected to discrimination and eventually retaliation in the workplace for her complaining about the actions of management of Defendant Curae Health at PMC.

40.    Wallace was not subjected to any written discipline for any such conduct in a timely manner and per policy of Defendant.  Tritt claimed that the disciplined related to events going back to August 4, 2018.  The meeting with Tritt took place almost seven (7) weeks later.

41.    Plaintiff Wallace would show that any reports of "disruptive behavior" should be documented and investigated by Defendant in accordance with Defendant's policy at PMC. No such investigation took place regarding any disruptive or bullying behavior.

42.    Wallace was not given an opportunity to address any discipline issues prior to September 26. 2018.  Wallace did not engage in any disorderly conduct; unprofessional conduct; and she did not have an attitude issue. Any such conduct had never been brought to Wallace's attention by management.

43.     Wallace was to return to work on Monday, October 1, 2018, in the ER.  Wallace never returned to the ER after September 26, 2018.  Wallace had been singled out and treated different for other ER nurses at PMC. Wallace had been suspended for no plausible or legitimate reason; and she was replaced by a Caucasian ER Nurse at PMC.

44.     On Friday, September 29, 2018, at 6:42 p.m., Trittt sent a ***text message*** to Wallace, on her day off, advising her that she was placed on ***administrative leave*** effective October 1, 2018, until further notice.  The text message from Tritt said that "I have spoken to HR this afternoon. Effective Monday you have been placed on administrative leave with pay. You are not to report to work. I will let you know the outcome as soon as I know. I also need a copy of your excuse for the weekend."

45.     Wallace did not know what Tritt was referencing as to "outcome" in the text message and neither Tritt or Bensen communicate to Wallace after the text message of September 29, 2018.  Wallace was simply suspended and place on administrative leave by Defendant Curae Health ***indefinitely***.

46.     On or about **October 4, 2018**, Wallace filed a **complaint/grievance** with PMC regarding her disparate treatment and retaliation in the workplace on September 26, 2018, her suspension by Tritt, and her being placed on administrative leave on September 29, 2018 by Defendant Curae Health.  Wallace's complaint/grievance addressed in detail the disparate treatment and the disciplined imposed by Tritt on September 26, 2018, *infra*.

47.     The October 4, 2018 grievance was delivered in person by Wallace's mother, Kay Wright to Human Resources at the hospital.  Wallace would show that she asked her mother to deliver the grievance because she was very upset at her suspension and treatment by Defendant Curae Health.  The October 4, 2018 complaint/grievance of Wallace and the hospital record of

the grievance/complaint is attached hereto and marked **Exhibit "A"** and incorporated herein by reference.

48.      Wallace did not know that she was being transferred when she filed her complaint/grievance. Wallace also did not know that Tritt or Defendant Curae Health was considering having her "transferred" anywhere as she was scheduled to return to the ER on October 1, 2018.

49.      Plaintiff Wallace would show that she never returned to the ER at PMC after being suspended by Tritt on September 26, 2018, and she had no further communications from Tritt or Benson after the ***text message*** of September 29, 2018. No one at HR ever discussed the work situation of Wallace before she suspended and placed on administrative leave on September 29, 2018.

### PLAINTIFF WALLACE AND THE TRANSFER TO APS WEST CAMPUS

50.      On or about October 4, 2018, Plaintiff Wallace received a call from the HR Director, Bridgett Cosby, that she needed to meet with her on October 8, 2018. Wallace was not told of the nature of the meeting or what was going to be discussed.  Wallace had just that day filed her complaint/grievance with Defendant's HR Department at the hospital, and with Ms. Cosby.

51.      On October 8, 2018, Plaintiff Wallace's mother, Kay Wright, drove her to the meeting. The grievance had been filed only days earlier. Wallace was still upset at the action taken by management.  Wallace and her mother met with Bridgett Cosby, and another person by the name of "Cynthia" with the hospital.  Ms. Wright was asked to leave the meeting and she did so.

52.     During the October 8, 2018, meeting, Plaintiff Wallace was told by Ms. Cosby that she was being transferred to the APS West Campus. Wallace was told to report to the psychiatrist hospital on October 15, 2018.  Wallace had no prior training in caring for the category of patients housed at the APS West Campus; and as a matter of hospital policy, such a transfer was ***not*** a routine procedure.

53.     Plaintiff Wallace would show during her employment that no other ER Nurse had ever been transferred from the ER to the psychiatric hospital of Defendant Curae Health. Wallace was an ER trauma nurse and had been at PMC since 2014. Wallace's education, certifications, training, education and experience was to be a trauma nurse and dealing with life threatening treatment of patients at the hospital.

54.     This demotion/transfer by Defendant Curae Health resulted in Wallace having to sit at a desk, take patients to AA meetings, and watch the patients eat lunch. Wallace was not using even her basic nursing skills in the new position at the psychiatric hospital. Wallace was an experienced trauma nurse at PMC and her responsibilities included the triage of sick and injured patients, treating stroke patients and preparing them for emergency procedures or emergency operations.

55.     The job requirement for her "new position" provides for 1-3 years of required ***psychiatric nursing***.  Wallace had no training in psychiatric nursing.  This purported transfer and demotion by the management of Defendant Curae Health altered the terms and conditions of Plaintiff Wallace's employment in a materially adverse way.  The "transfer" was an effort by management to force Plaintiff Wallace to resign her employment and seek ER nursing duties elsewhere.

56.     Plaintiff Wallace's nursing skills were not utilized as a result of this new position at APS West Campus.  No Caucasian ER Nurse had been subjected to this type of treatment in the workplace at PMC; and no similar situated ER Nurse had been transferred as discipline to the psychiatric hospital at APS West Campus.  The "transfer" was without just cause and without any precedent at Defendant Curae Health and PMC.

57.     Plaintiff Wallace had always been an ER Nurse at the hospital; and she had no experience in administering to the needs of psychiatric patients.  No one told Wallace that there was a "waiver of the required credentials" for her to work in a psychiatric unit. Ms. Wallace had never work in the psychiatric unit of ***any*** hospital.

58.     Plaintiff Wallace after the transfer/demotion was relegated to the role of an administrative desk job, and observer in the psychiatric ward.  Wallace was not able to use and continue to develop her nursing skills.  Wallace did not know the reason for the "transfer" to APS West Campus and she was not told as to any such plausible reason for such action.

59.     On or about **October 17, 2018**, Wallace filed her ***second complaint /grievance*** regarding her transfer to the APS West Campus.  Wallace was unaware of any hospital policy that would have allowed any such disciplinary action to be taken against any employee.  Wallace received no response from management as to her October 4, 2018 complaint/grievance, a copy of which is attached hereto marked **Exhibit "B"** and incorporated herein by reference.

60.     Plaintiff Wallace provided Defendant Curae Health and PMC in ***specific detail*** her allegations regarding disparate treatment and retaliation in her second complaint/grievance. Specifically, Wallace informed her employer that she was not trained in caring for the patients in APS West Campus, that she had been an ER Nurse; and that the transfer to the position in APS

was in retaliation for her filing her complaint/grievance and that upper management should address the transfer.

61.     On or about November 1, 2018, Wallace met with Defendant's HR Director, David Lopater, from Knoxville, Tennessee in regard to her grievance, transfer to APS West Campus; and her disparate treatment and retaliation in the workplace.  Mr. Lopater did not appear to be interested in the issues regarding Plaintiff Wallace.

62.     During the meeting of November 1, 2018, Wallace again told the management representative, Mr. Lopator, that her feelings had not changed since the transfer; that she was concerned about her lack of any training (meeting the 1-3 years if psychiatric nursing); that she was an ER Nurse at the hospital.

63.     Plaintiff Wallace during the November 1, 2018, meeting told Mr. Lopater that she had an incident where a psychiatric patient that was walking closely and fast behind her. At that time the doors were locked in the facility and she was not prepared or trained on how to approach a patient like that. Wallace reported the incident to her supervisor

64.     Plaintiff Wallace would show that she did not know how to protect herself or approach the psychiatric patient.  Wallace was fearful about the incident and reported to Mr. Lopater. After the incident, it was obvious to Wallace that her lack or training could have resulted in either herself or the patient being seriously hurt or injured.

65.     Wallace told Mr. Lopator that she was being discriminated against in her treatment and transfer; and that the transfer was retaliatory.  Mr. Lopater told Wallace that she was using some "**strong words**" claiming discrimination and retaliation.  Wallace felt intimidated by the actions of Mr. Lopater and he was only a "notetaker" for Defendant Curae Health and PMC.

66.     Plaintiff Wallace would show that the "meeting" provided no assurances that Curae Health was going to address her internal grievances or her transfer. Mr. Lopater made no comment as to the action of management or the transfer to APS West Campus. Mr. Lopater did not ask for any witnesses that would support Wallace's claim of discriminatory or retaliatory treatment.

67.     After the meeting on November 1, 2018, with Mr. Lopater, Wallace's working conditions continued to deteriorate making her unable to continue to work in the psychiatric unit. Wallace had been reassigned from her ER Nurse position to the psychiatric ward and as a result was humiliated by management to the point that it was calculated to encourage her resignation.

68.     After the transfer, there was a final incident with a psychiatric patient that scarred Wallace and as a "final straw", she could no longer work in that environment. Wallace had sought help from Defendant's HR Director, Mr. Lopater; and only told it would be weeks before her grievances/complaints would be addressed by management.

69.     Plaintiff Wallace would show that as a result of the action taken by Defendant Curae Health, that she had been stripped of job duties and her efforts to seek relief from her employer had been ignored and her only option was to resign her employment. Wallace had never been a psychiatric nurse or worked anywhere in the hospital since 2014 other than the ER as a trauma nurse. The "transfer" resulted in Wallace performing menial clerical work.

70.     Plaintiff Wallace had reported to management that she was being harassed and mistreated and that Defendant Curae Health failed to take remedial action from and after October 4, 2018, when Wallace submitted her first complaint/grievance. Wallace reported the acts of harassment including her demotion in duties and responsibilities and Defendant Curae Health knew that Wallace was the ***only*** African American ER Nurse at PMC.

16

71.     On or about November 5, 2018, Plaintiff Wallace had no alternative but to resign her employment. After confrontation by a psychiatric patient, and Wallace's fear that she was not properly trained for the category of patients housed at APS West Campus, left the hospital premises. Wallace's letter of resignation, a copy of which is attached hereto, marked **Exhibit "C"** and incorporated herein by reference, was delivered to Defendant Curae Health.

72.     Wallace was constructively discharge on that date as her working conditions had reached a point that a "reasonable employee in her shoes" would be felt compelled to resign. *Hockman v. Westward Commc'ns, 407 F. 3d 417 (5th Cir. 2004).*

### WALLACE'S FILING OF HER CHARGE WITH THE EEOC

73.     On or about January 14, 2019, Plaintiff Wallace filed a Charge of Discrimination for racial discrimination and retaliation and HWE under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant Curae Health, Inc. and PMC, EEOC Charge No. 423-2019-00609. That a copy of the "Charge" of Plaintiff Wallace is attached hereto, marked **Exhibit "D"** and incorporated herein by reference.

74.     The EEOC investigated the Charge of Plaintiff Wallace for racial discrimination in violation of Title VII, and retaliation and HWE against Defendant Curae Health. The Charge of Plaintiff Wallace was pending before the EEOC from the date of filing in January 2019 until the investigation concluded in February 2020.

75.     During the EEOC investigation, Wallace provided evidence, including witness declarations, in support of her Charge. Defendant Curae Health also provided its "Position Statement" and claimed that Defendant Curae Health had not violated Title VII by any of its

actions. Defendant did not provide the EEOC with any witness declarations or statements from any witnesses.

76.     Plaintiff Wallace has filed this action in a timely manner and as provided under the *Notice of Right to Sue* dated February 24, 2020, and that she has complied with all judicial prerequisites for the bringing of her Title VII action against Defendant Curae Health.

77.     Plaintiff Wallace has brought this Title VII action for racial discrimination within ninety (90) days of his receipt of the *Notice of Right to Sue* referred to herein that was issued by the EEOC on February 24, 2020.

78.     Plaintiff Wallace would show that the acts and conduct of Defendant Curae Health and its officials named herein, were unlawful, calculated and with the intent and purpose of violating her civil rights; and Defendant Curae Health should be accountable for the acts and conduct as set forth in this Complaint.

79.     Plaintiff Wallace is seeking any and all relief available to her under federal law, and in particular Title VII, including but not limited to back pay, actual and compensatory damages, attorney's fees, injunctive relief including reinstatement. and any other relief available to which Plaintiff Wallace is entitled under Title VII; and punitive damages under *42 U.S.C. Section 1981, being the Civil Rights Act of 1991, as amended*, as a result of the intentional and willful actions that were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace.

## COUNT I

80.     Plaintiff Wallace re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

81.     Plaintiff Wallace was unlawfully discriminated against on the basis of his race (African American) in violation of *Title VII and Section 1981*; and as a result of the acts and conduct as alleged herein.  Plaintiff Wallace would show that the Defendant in this action had no legitimate reason to take adverse actions against her, including her suspension, unlawful transfer and demotion, or to make her working conditions so intolerable that she was compelled to resign and the purported reason given to justify the adverse action taken against her, including her October 2018 transfer was false and unworthy of belief.

82.     Plaintiff Wallace would show that other employees similarly situated to Plaintiff Wallace, not of her race (African American) and not in her protected category have not been treated in this manner; and they have not been subjected to such racial discrimination by Defendant Curae Health, that were intentional and willful.

83.     Plaintiff Wallace would show that PMC did not have a policy or practice of transferring nurses from ER to the psychiatric ward.  No Caucasian ER Nurse had ever been transferred from the Emergency Room to the psychiatric ward – Behavioral Health Department.

84.     Plaintiff Wallace seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct; and that the acts and conduct that subjected Plaintiff Williams to "disparate treatment" and she is entitled to receive for these actions and all relief available to her for violation of Title VII, including but not limited to, reinstatement, back pay and any loss of benefits that Plaintiff Wallace suffered as a result of the acts and conduct of the Defendant Curae Health as alleged herein.

85.     The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause

harm and injury to Plaintiff Wallace. Plaintiff Wallace's treatment in the workplace was calculated with the unlawful intent of causing her to suffer mentally, physically and emotionally.

86.     As a result of the acts and conduct as alleged herein, Plaintiff Sparks seeks any and all remedies and damages available to him as a result of the aforementioned acts and conduct in violation of the provisions of *Title VII and 42 U.S.C. § 1981, being the Civil Rights Act of 1991, as amended* including but not limited to, actual, compensatory and punitive damages as a result of the acts and conduct of the Defendant Curae Health as alleged herein.

## COUNT II

87.     Plaintiff Wallace re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

88.     Plaintiff Wallace was unlawfully retaliated against in violation of *Title VII and Section 1981*; and as a result of the acts and conduct as alleged herein.  Plaintiff Wallace would show that she engaged in a protected activity under Title VII by placing Defendant on notice of her disparate treatment in the workplace.

89.     Defendant Curae Health had no legitimate reason to take adverse actions against her and to make her working conditions so intolerable that she was compelled to resign and the purported reason given to justify adverse action taken against her was false and unworthy of belief.   The actions of Defendant were intentional and willful.

90.     Plaintiff Wallace seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct; and that the acts and conduct that subjected Plaintiff Wallace to retaliation and reprisal in the workplace.

91.     The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace.

92.     As a result of the acts and conduct as alleged herein, Plaintiff Wallace seeks any and all remedies and damages available to him as a result of the aforementioned acts and conduct in violation of the provisions of *Title VII and 42 U.S.C. § 1981, being the Civil Rights Act of 1991, as amended* including but not limited to, actual, compensatory and punitive damages as a result of the acts and conduct of the Defendant Curae Health as alleged herein.

### **COUNT III**

93.     Plaintiff Wallace re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

94.     Defendant Curae Health had a duty to protect employees such as Plaintiff Wallace from management team members that engage in acts of discrimination and retaliation such as Tritt and Bensen. that possess the authority to ***inflict psychological injury*** by altering the terms and conditions of employment. Defendant Curae Health has policies that prevent such discriminatory and retaliatory treatment in workplace.  The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause.

95.     Defendant Curae Health had a duty to investigate the grievances of Plaintiff Wallace that reflected a violation of PMC policy and constituted retaliation and reprisal in the workplace and that constituted an intentional and premediated act of violating the protected civil rights of employees of Defendant Curae Health.  Policy that provided for the investigating of

complaints/grievances was totally disregarded and inadequate based upon the claims of Plaintiff Wallace.

96.     The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace.

97.     As a result of the acts and conduct as alleged herein, Plaintiff Wallace is entitled to recover actual, compensatory and punitive damages from Defendant Curae Health in this action.

## COUNT IV

98.     Plaintiff Wallace re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

99.      Plaintiff Wallace would show that the corporate policies and procedures of Defendant Curae Health, at all material times, was that all employees are treated and disciplined the same, regardless of age, sex or race; and the actions taken in regard to Plaintiff Wallace were a willful and wanton violation of those corporate polices.   Other employees were not treated in the same manner as Plaintiff Wallace and not subject to the same terms and conditions of employment at Defendant Curae Health.

100.    Defendant Curae Health and its management team made the decision to endanger not only Plaintiff Wallace but the psychiatric patients in APS West Campus.  Defendant Curae Health did not have a reasonable or honest belief that Plaintiff Wallace should be transferred to the West Campus; knew that Wallace had no psychiatric nurse training as mandated in the job description of 1-3 years; knew that Wallace was humiliated by the transfer; knew that Wallace

had a severe reduction of duties and responsibilities; and knew that the reassignment to the APS West Campus was menial and degrading.

101.    Any claimed investigation conducted by Defendant Curae Health as to the complaints/grievances of October 4, 2018 or October 17, 2018, including Wallace's transfer to the psychiatric hospital not only was ***inadequate and deeply flawed***, but violated the applicable policies of Curae Health and PMC; and subjected Wallace to discrimination, retaliation and a continued hostile work environment.  *Bailey v. Quest Diagnostics, Inc., 2017 U.S. Dist. LEXIS 210730, 2017 WL 6524949 (E.D. Va. Dec. 19, 2017).*

102.    The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace.  Defendant knew that a reasonable employee in the position of Plaintiff Wallace would have felt compelled to resign.

103.    As a result of the acts and conduct as alleged herein, Plaintiff Wallace is entitled to recover actual, compensatory and punitive damages from the Defendant Curae Health in this action.

## COUNT V

104.    Plaintiff Wallace re-alleges and hereby incorporates by reference makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

105.    Plaintiff Wallace at all material times alleged herein was subjected to a hostile work environment that involved harassment based on her race (African American) which was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create

an abusive working environment." *Walton-Lentz v. Innophos, Inc., 476 F. App'x 566, 570 (5th Cir. 2012) (alternation in original); Hiner v. McHugh, 546 F. App'x 401, 408 (5th Cir. 2013).*

106. Plaintiff Wallace would show that her work environment was hostile or abusive based upon the totality of the circumstances, including the frequency and severity of the discriminatory conduct; and the hostile work environment was "physically threatening and **_humiliating_**" and unreasonably interfered with Plaintiff's ability to perform her job." *Hiner v. McHugh, supra.*

107. Defendant Curae Health were on notice of the adverse treatment by management and simply did nothing to stop the harassment Wallace was subjected to in the workplace and the transfer and demotion of Wallace to a position for which she did not even meet the minimum qualifications for the position assigned and to which Wallace had no training, experience or expertise in treating psychiatric patients. The actions of Defendant were intentional and willful.

108. Wallace reiterated in her complaints/grievances her treatment by management; and that she had never been written up or disciplined prior to the written warning of September 26, 2018; and there was simply no plausible reason for the transfer, retaliation and reprisal that she faced for bringing to the attention of management the harassment and hostile working environment that existed in the workplace at PMC.

109. As a result of the acts and conduct as alleged herein, Plaintiff Wallace is entitled to recover actual, compensatory and punitive damages from the Defendant Curae Health.

## COUNT VI

110. Plaintiff Wallace re-alleges and hereby incorporates by reference makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

111.    That as a result of the acts of Defendant, as alleged herein, Plaintiff Wallace has suffered from "*post-termination*" emotional distress; that the emotional distress sustained by Plaintiff Wallace is beyond that which a reasonable person could be expected to endure in light of the circumstances surrounding the allegations made herein; and that as a result, Plaintiff has suffered damages including, but not limited to the following:

    a.    past, present and future physical pain and suffering which is great and grievous and which will continue indefinitely into the future;

    b.    great emotional and mental suffering and anguish, both past and present, and which is expected to continue into the future indefinitely;

    c.    medical bills, doctor bills, psychologist bills, prescription bills and other medical-related expenses which have been incurred;

    d.    mental anguish, past, present and future;

    e.    loss of enjoyment of life;

    f.    total loss of self-confidence and self-esteem; and

    g.    mental anguish to Plaintiff and her family.

112.    As a result of the acts and conduct as alleged herein, Plaintiff Wallace is entitled to recover actual, compensatory and punitive damages from the Defendant Curae Health.

## PUNITIVE DAMAGES

## COUNT VII

113.    Plaintiff Sparks hereby re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

114.    That the acts and conduct of the Defendant Curae Health as alleged herein, were done in such willful and wanton disregard for the rights of Plaintiff, and with such *gross negligence* that Plaintiff is entitled to recover of, from and against the Defendant punitive

damages over and above the actual and compensatory damages sustained by Plaintiff as a result of the outrageous acts and conduct and to deter them and others from engaging in such similar conduct in the future.  *Cooper Indus. v. Leatherman Tool Group, 532 U.S. 424 (2001).*

115.    The actions of Defendant were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace.

116.    The intentional actions of Defendant in violation of federal law caused Plaintiff Wallace to suffer injury, damage and loss.

## PRAYER FOR RELIEF OF PLAINTIFF WALLACE

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff, **KAYLA WALLACE**, respectfully requests this Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a.    Order that Defendant **CURAE HEALTH, INC., A TENNESSEE CORPORATION**, to reinstate Plaintiff Wallace to the position of ER Nurse, the position she held prior to her unlawful suspension, administrative leave, demotion and termination of employment, free from all reprisals, as an ER Nurse, with full back pay and benefits or, in the alternative, and award Plaintiff Wallace front pay as allowed by law and all other damages to which she is entitled under federal law;

b.    Award appropriate injunctive relief against Defendant Curae Health, Inc, a Tennessee Corporation, as authorized and provided under Title VII of the Civil Rights Act of 1964, as amended; and to prohibit in the future such discriminatory and retaliatory treatment at any facility of Defendant Curae Health;

c.     Award Plaintiff Wallace a judgment against Defendant, **CURAE HEALTH, INC., A TENNESSEE CORPORATION,** in the amount of ***$850,000.00*** for her actual and compensatory damages to which she is entitled for injury, damage, and loss suffered as a result of Defendant's violation of 42 U.S.C. §§ 1981 and 29 U.S.C. §§ 794 for discrimination and prohibited retaliation;

d.     Award Plaintiff Wallace any and all costs and attorney's fees pursuant to the relevant provisions of 42 U.S.C. §§ 2000e; and 42 U.S.C. Section 1988;

e.     Award Plaintiff Wallace any and all such other and further relief as may be necessary and proper and to which she is otherwise entitled pursuant to the provisions of 42 U.S.C. §§ 1981 and 29 U.S.C. §§ 794;

f.     Award Plaintiff a judgment against Defendant **CURAE HEALTH, INC., A TENNESSEE CORPORATION** for ***punitive damages***, to which Plaintiff Wallace is entitled as a result of the acts and conduct alleged herein against the Defendant Curae Health that were intentional and willful; and were undertaken in a conscious disregard of one's duties and without just cause; and with the specific intent to cause harm and injury to Plaintiff Wallace; and to deter such conduct in the future in an amount as determined by a jury of the peers of Plaintiff Wallace and this Court;

g.     ***Order*** Defendant Curae Health and their officers, agents, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any acts to defame the character and reputation of Plaintiff Wallace and to ***purge Plaintiff's personnel file*** of any derogatory and false documents;

h.     Award Plaintiff Wallace any and all injunctive relief as provided under Title VII, including reinstatement for the unlawful acts committed by Defendant Curae Health that were intentional and with the purpose and intent of injuring and damaging Plaintiff Wallace;

i.     Award Plaintiff Wallace any such other and further relief that she may be entitled to in the premises; and

J.     Award Plaintiff any and all costs to which Plaintiff may be entitled to recover from Defendant Curae Health in this action being filed herein.

**RESPECTFULLY SUBMITTED**, this the 22nd day of May, 2020.

**KAYLA WALLACE, PLAINTIFF**

By:  **/s/John M. Mooney, Jr.**
    **JOHN M. MOONEY, JR.**
    **HER ATTORNEY**

**JOHN M. MOONEY, JR.**
**LAW OFFICES OF JOHN M. MOONEY, JR., PLLC**
208 Waterford Square, Suite 100
Madison, Mississippi 39110
Telephone (601) 981-9555
Facsimile (601) 981-7922
MBIN: 3431
Email: john@jmooneylaw.com

**ATTORNEY FOR PLAINTIFF, KAYLA WALLACE**

**REQUEST FOR TRIAL BY JURY**

**COMES NOW** the Plaintiff, **KAYLA WALLACE**, by and through counsel, and respectfully requests this Court to grant her a trial by jury of her peers.

**RESPECTFULLY SUBMITTED**, this the 22nd day of May, 2020.

**/s/John M. Mooney, Jr.**
**JOHN M. MOONEY, JR.,**

28